# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

MIAMI VALLEY FAIR HOUSING
CENTER INC., *et al.*,

      Plaintiffs,

vs.                                      Case No.: 2:16-cv-607
                                          JUDGE GEORGE C. SMITH
                                          Magistrate Judge Jolson

METRO DEVELOPMENT LLC, *et al.*,

      Defendants.

## ORDER

On May 16, 2017, the United States Magistrate Judge issued an Opinion and Order (the "May 16, 2017 Order") on the parties' discovery dispute regarding whether certain documents related to the sale of one of the subject properties were discoverable. (Doc. 88). This dispute was originally raised in a status conference on April 7, 2017, before Magistrate Judge Jolson and in simultaneous letter briefs submitted May 5, 2017. In the May 16, 2017 Order, Magistrate Judge Jolson ruled that Plaintiffs were not entitled to the expert report created by consulting expert Moody Nolan (the "Moody Nolan Report"), nor were Plaintiffs entitled to a list of modifications made at the Four Pointe Project—which were based at least in part on the findings contained in the Moody Nolan Report. In so holding, Magistrate Judge Jolson found that the Moody Nolan Report was protected by the work product doctrine and no waiver of that protection occurred given the nature of the relationship between Defendant Four Pointe, LLC ("Four Point") and prospective buyer Columbus Metropolitan Housing Authority ("CMHA"). (Doc. 88, Ord. at 4, 6–7). Further, Magistrate Judge Jolson held that the Modification List was

protected by the work product doctrine because "the driving force behind the document was the pending litigation, rather than the ordinary course of business." (*Id.* at 7).

This matter is now before the Court on Plaintiffs' Appeal from the Magistrate Judge's Order Denying Plaintiffs' Motion to Compel (the "Appeal"). (Doc. 89). Defendants timely responded (Doc. 93) and Plaintiffs, in contravention of General Order No. COL: 14-01, replied in support without seeking leave of this Court (Doc. 94). Defendants moved to strike Plaintiff's reply (Doc. 95). Plaintiffs subsequently withdrew their reply, moved for leave to reply, and resubmitted the same brief for this Court's consideration (Doc. 96-1). For the reasons that follow, Plaintiffs' Motion for Leave is **DENIED**, Defendants' Motion to Strike is **GRANTED**, and Plaintiffs' Appeal is **DENIED**.

I.      **Plaintiffs' Motion for Leave and Defendants' Motion to Strike**

Federal Rule of Civil Procedure 72 "does not specifically provide for, nor does it contemplate in its comments, the filing of a reply memorandum in support of a party's objection." *JS Prod., Inc. v. Standley Law Grp., LLP*, No. 09-CV-311, 2010 WL 3604827, at *2 (S.D. Ohio Sept. 13, 2010) (Frost, J.), *aff'd,* 418 F. App'x 924 (Fed. Cir. 2011). Nevertheless, Plaintiffs argue this Court should grant their Motion for Leave because their original motion to compel was decided after the parties submitted simultaneous letter briefs and Defendants' response to the Appeal was the first opportunity Defendants had to squarely address Plaintiffs' arguments. In turn, Plaintiffs argue their proposed reply "focuses on arguments and case law that plaintiffs could not have anticipated . . . ." (Doc. 96, Mot. for Leave at 2). The briefing does not support this contention. For instance, Plaintiffs argue their proposed reply is their only opportunity to respond to Defendants' standing-related arguments, but Plaintiffs devoted nearly four pages to the standing issue in their Appeal. (Doc. 89, App. at 15–18).

In sum, the Court agrees with Defendants' position that Plaintiff's proposed reply does not set forth new arguments and is merely an attempt to have "another, and the last, bite at the apple." (Doc. 97, Defs.' Resp. to Motion for Leave at 1). As this Court recently held when denying a motion for leave to file a reply in support of an objection, "[a]ll of [the] issues have either been fully briefed or are well within the Court's ability to research and determine with the benefit of the present record." *Little Hocking Water Assn., Inc. v. E.I. Du Pont De Nemours & Co.*, No. 2:09-CV-1081, 2015 WL 12991138, at *2 (S.D. Ohio Jan. 14, 2015) (King, M.J.) Accordingly, Defendant's Motion to Strike is **GRANTED** and Plaintiff's Motion for Leave is **DENIED**.

## II.     Plaintiffs' Appeal

In substance, Plaintiffs' Appeal argues that the May 16, 2017 Order is clearly erroneous or contrary to law for three reasons. First, "the Magistrate Judge applied the wrong legal standard and ignored record evidence to conclude that defendants and CMHA did not waive work-product protection when they shared the documents" at issue. (Doc. 93, Appeal at 2). Second, Defendants lack standing to withhold the documents at issue because they were not created "by or for" Defendants. (*Id.*). And finally, the Modification List was "a component of a commercial contract and thus has never enjoyed work-product status at any time." (*Id.*). The court will address each of these issues in turn.

### A.     Standard of Review

Upon timely objection, a district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to the magistrate judge's factual findings while legal conclusions are reviewed under the more lenient "contrary to

law" standard. *Gandee v. Glaser,* 785 F.Supp. 684, 686 (S.D. Ohio 1992), *aff'd,* 19 F.3d 1432 (6th Cir. 1994). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Eversole v. Butler County Sheriff's Office*, 2001 U.S. Dist. LEXIS 26894, at *2 (S.D. Ohio August 7, 2001) (sustaining objections to magistrate judge's order rejecting claim of attorney-client privilege and work-product) (citation omitted). The District Court Judge's review under the "contrary to law" standard is "plenary," and it "'may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent.'" *Gandee,* 785 F.Supp. at 686 (citations omitted). It is with these standards in mind that the Court reviews the Magistrate Judge's Order.

**B.    Factual Background**

The facts relevant to the present dispute are limited and have been succinctly set forth in the May 16, 2017 Order. (Doc. 88, Ord. at 1–3). Four Pointe and CMHA entered into a purchase agreement whereby CMHA agreed to purchase the Four Pointe Project. (*Id.* at 1). Before that deal was completed, Plaintiffs filed the instant lawsuit and CMHA became aware of the action. (*Id.* at 1–2). As a result, Moody Nolan, a consulting expert, was retained to review the Four Pointe Project and create a report. The parties disagree over the role in which Four Pointe played in procuring Moody Nolan's services. Defendants intimate that the decision to have the Moody Nolan Report created was one made jointly with CMHA and for the benefit of both parties, which is evidenced by those parties amending their Agreement so that Four Pointe would agree to indemnify CMHA with respect to the property. (*Id.* at 2). Plaintiffs, on the other hand, argue that CMHA retained Moody Nolan on its own accord and for its own economic benefit.

As a mentioned above, the findings in the Moody Nolan Report caused Four Pointe and CMHA to amend their Agreement. One component of that amendment was memorialized as the Modification List, which was attached to the amendment and stamped as confidential. (Doc. 93, Resp. at 19). Defendants generally assert the Modification List "incorporates portions of the Moody Nolan Report and discusses modifications that Four Pointe, LLC and Metro agreed to address in order to assuage CMHA's concerns about liability going forward" (*Id.*). Plaintiffs allege that CMHA's Chief Operation Officer disclosed to Plaintiffs' Chief Executive Officer that the Modification List required Four Pointe to perform $200,000 in retrofits before the sale closed. (Doc. 88, Ord. at 2).

Plaintiffs issued document requests which they argue would have included the Moody Nolan Report and related documents and the Modification List. (*See* Doc. 89-1 at 36–37). Plaintiffs also served a subpoena on CMHA seeking the same, or similar, documents. (*Id.* at 47). Defendants and CMHA both produced privilege logs withholding the documents on the bases of work product and common interest. (*Id.* at 59–69).

C. Discussion

The Magistrate Judge in her Order carefully considered all the arguments of the parties submitted in their May 5, 2017 letters. The Court has reviewed the prior discovery rulings, the letters of the parties and the briefing on the objections and does not find that there was any error by the Magistrate Judge in the May 16, 2017 Order. The Magistrate Judge correctly employed the "some evidence" standard in determining that "the evidence demonstrates that the [R]eport was prepared because of this litigation[]" regardless of whether Moody Nolan was retained by CMHA alone or by CMHA and Defendants collectively. (Doc. 88, Ord. at 4). There is uncontroverted evidence showing that Defendants and CMHA had been in negotiations for the

5

sale of the Four Point Project for a considerable time before this lawsuit was filed. The Moody Nolan Report—and the ramifications thereof—only came to be because CMHA became aware of this litigation.

Further, the Court agrees that there has been no waiver of work-product protection because CMHA and Defendants had a common interest, i.e., they likely faced a common litigation opponent in Plaintiffs. Plaintiffs argue that CMHA and Defendants were in an adversarial relationship, and thus waived work product protection. Plaintiffs also argue that "anticipation of a dispute between CMHA and Defendants appears to have been the motivating force for most, if not all, of the withheld documents." (Doc. 89, App. at 10). The Court does not agree with these assertions. Rather, CMHA and Defendants' took steps to align their interests in this litigation when they amended their Agreement and Defendants agreed to indemnify CMHA and its lender (PNC Bank) for potential liability arising from the transaction. The Court recognizes that there is some potential for an adversarial relationship between Defendants and CMHA, but that risk is unrelated to the disclosures made by Defendants to CMHA and is "insufficient to destroy the common interest." (Doc. 88, Ord. at 5 (citing *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010) (Frost, J.) ("it is not necessary that parties be in agreement on every point; a communication is privileged as long as it deals with a matter on which parties have agreed to work toward a mutually beneficial goal, even if parties are in conflict on some points."))). This Court finds no reason to discourage the types of communications CMHA and Defendants partook in in because, if anything, they only serve to eliminate the possibility of future litigation.

Next, Plaintiffs claim Defendants lack standing to assert work product protection over the documents because they were not created "by or for" Defendants, as required by Federal Rule of

Civil Procedure 26(b)(3)(A). Specifically, Plaintiffs argue that the documents were created by Moody Nolan for CMHA's sole, commercial benefit. Conversely, Defendants argue that the Moody Nolan Report was created as part of a joint defense strategy or common interest despite the fact that Defendants and CMHA were contractual counterparties. As Plaintiffs have cited, "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the joint defense privilege . . . . Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." Doc. 89, Appeal at 17 (citing *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). Here, the Court finds the conduct of Defendants and CMHA, along with their respective counsel, to be squarely in line with this requirement. Defendants rightfully point out that Moody Nolan gained access to the Four Pointe Project with the consent of Defendants through Defendants' litigation counsel. It is clear from the record and Defendants' briefing that Defendants consented to this inspection because of the present litigation and CMHA's justified fear of future liability in connection with the Four Pointe Project. Defendants also assert that both they and CMHA understood the findings of the Moody Nolan Report would remain confidential. In the Court's view, this joint agreement is strongly supported by CMHA's unwillingness to turn over the Moody Nolan Report when subpoenaed by Plaintiffs.

This Court cannot say the Magistrate Judge erred in finding that Defendants and CMHA were parties to a joint defense strategy. Plaintiffs seemingly characterize the creation of the Moody Nolan Report as a purely commercial decision made by CMHA. However, as stated above, CMHA and Defendants had been in negotiations for a considerable length of time, but it was not until after CMHA became aware of the instant litigation that they decided to employ the services of Moody Nolan. The Court cannot view the Moody Nolan Report's creation in a

vacuum. When viewing the totality of the circumstances, this Court finds that CMHA and Defendants' recognized that the present litigation posed a potential threat to the sale of the Four Pointe Project and those parties agreed to "formulat[e] a common legal strategy." *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 348 (N.D. Ohio 1999) (citation omitted). Accordingly, the Court finds sufficient evidence to conclude that CMHA and Defendants undertook a joint defense strategy and Defendants have standing to assert work product protection over the Moody Nolan Report and related documents.

In Plaintiffs' final assignment of error, they challenge the Magistrate Judge's finding that the Modification List was protected by the work product doctrine because "the analysis is whether the document was litigation-related or arose in the ordinary course of business[]" and "the driving force behind the document was the pending litigation, rather than the ordinary course of business." (Doc. 88, Ord. at 6–7). Plaintiffs argue that the Modification List is not protected by the work product doctrine because it "reflects negotiated contractual terms, not litigation strategy." (Doc. 89, Appeal at 19). The Magistrate Judge employed the proper standard in reaching her conclusion. Likewise, this Court has no doubt that the Modification List—a direct product of the Moody Nolan Report—was indeed created as a result of the current litigation. By all accounts, the list is essentially an encapsulation of the Moody Nolan Report itself, containing a list of potential liabilities and remedies. For the same reasons mentioned above, this Court finds the Modification List to be protected work product.

### III. Conclusion

For the reasons stated above, Plaintiffs' Appeal from the Magistrate Judge's Order Denying Plaintiffs' Motion to Compel is **DENIED**. In addition, Defendant's Motion to Strike is **GRANTED** and Plaintiff's Motion for Leave is **DENIED**.

The Clerk shall remove Documents 89, 95, and 96 from the Court's pending motions list.

**IT IS SO ORDERED.**

                                                         _/s/ George C. Smith_
                                                        **GEORGE C. SMITH, JUDGE**
                                                        **UNITED STATES DISTRICT COURT**